**WABASH RAILROAD COMPANY**
v.
**The UNITED STATES.**
No. 47176.

United States Court of Claims.
Jan. 11, 1955.

Eugene S. Davis, St. Louis, Mo., for plaintiff.

Martin E. Rendelman, New York City, with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

The sole issue in this case is whether certain shipments of material over the plaintiff's line of railway and connecting lines should be paid for at regular commercial rates rather than on the basis of land-grant freight rates.

At issue are 1,839 carload shipments. The major portion of these shipments was from various points in the United States to be delivered to Oak Ordnance Plant, Illiopolis, Illinois.

Thirty-two carloads were shipped to the Sangamon Ordnance Plant, Illiopolis, Illinois.

Fifteen carloads were delivered to C. H. Atkinson Paving Company, Chillicothe, Missouri.

There were some additional shipments, but they are not involved here.

All the shipments were delivered by plaintiff at destination. On some of the shipments plaintiff was paid by defendant at land-grant rates. As to others payment by defendant was originally made to plaintiff on the basis of the full commercial rate but upon subsequent audit by the General Accounting Office pursuant to section 322 of the Transportation Act of 1940, 54 Stat. 955, 49 U.S. C.A. § 66, alleged overpayments were determined and plaintiff was notified that land-grant rates applied to each shipment. The difference between the land-grant and commercial rates was recouped partly by a refund by plaintiff under protest, and partly by deductions on bills subsequently presented by plaintiff for payment of charges on other shipments not here involved.

It is conceded that the shipments were for military use. Section 321(a) of the Transportation Act, 49 U.S.C.A. § 65(a), provides for the applicable commercial rates except that such rates should not apply to the transportation of military or naval property of the United States moving for military or naval use.

The parties have stipulated that the issue to be finally determined is whether these carload shipments were property of the United States within the meaning of section 321(a) of the Transportation Act of 1940 at the time such shipments moved over the line of plaintiff's railroad and the connecting railways. They further stipulated that if the shipments were property of the United States then plaintiff has been lawfully paid on the basis of land-grant freight rates; otherwise, the commercial rates apply. The issue thus turns upon whether these various carload shipments were the property of the United States at the time of the shipment, within the meaning of the Transportation Act.

With respect to the shipments made to Oak Ordnance Plant and Sangamon Ordnance Plant, the cost-plus-fixed-fee contracts for the construction thereof each permitted title to the materials purchased thereunder to vest in the United States when acceptance of title was authorized or approved by the officer in charge. This right was set out in Article VIII of the contract for Oak Ordnance Plant and in a substantially identical provision of the contract for Sangamon Ordnance Plant. That article read as follows:

"ARTICLE VIII—TITLE
TO WORK

"1. Title to all materials, tools, machinery, equipment and supplies for which the A-E-M shall be entitled to reimbursement under Article XI shall vest in the Government at such point or points as the Contracting Officer may designate in writing, provided that the right of final inspection and acceptance or rejection of such materials, tools, machinery, equipment and supplies at such place or places as he may designate in writing is reserved to the Contracting Officer; provided further that, upon such final inspection, the A-E-M shall be given written notice of acceptance or rejection as the case may be. In the event of rejection, the A-E-M shall be responsible for the removal of the rejected property within a reasonable time."

In executing this power to designate the point of transfer of title, the contracting officer in charge caused the contractor to insert a clause in its purchase orders to its suppliers to the effect that title should pass to the purchaser at the point of origin. Plaintiff contends that by "purchaser" was meant the cost-plus-fixed-fee contractor. Defendant urges that "purchaser" was intended to mean the United States.

The contracts for the supplying of materials to be used in the construction of the Oak Ordnance Plant were awarded to the vendors submitting the lowest bids. Under instructions of the contracting officer, Maj. Glenn E. Hofto,

Area Engineer, the Architect-Engineer-Management (A. E. M.) contractors solicited bids on both an f. o. b. shipping point and f. o. b. destination price basis. Major Hofto secured information with respect to applicable land-grant rates and land-grant routings, and, in execution of his power to designate the point of transfer of title, by written instructions in the form of a memorandum or letter, directed the A. E. M. to have the following statement or statements of similar import inserted in and made a part of the purchase orders which are involved in this action:

"Title to materials and supplies purchased hereunder shall pass to the purchaser at [the point of origin,] provided that all materials and supplies purchased are subject to inspection at Illiopolis, Illinois by the Contracting Officer who executed and is defined in the Contract No. W1103-eng-3600, within a reasonable time, and the purchaser reserves the right to reject any materials or supplies which do not pass such inspection. In the event of rejection [the vendor] shall be responsible for the removal of rejected property within a reasonable time. On shipments made before receipt of routing instructions from the Area Engineer, ship on commercial ladings inserting thereon notation 'To be exchanged for Government Bills of Lading at destination.' Meantime, route via Illinois Central care Illinois Terminal to Illiopolis."

All the shipments to the Oak Ordnance Plant consisted of materials which were purchased on an f. o. b. shipping point basis.

On the reverse side of the purchase orders which were prepared by the employees of the cost-plus-fixed-fee contractors and approved by Major Hofto, was a printed statement that the order was placed for the benefit of and was assignable to the United States Government. It was further stated that if and when such assignment was made to and accepted by the United States Government, the seller agreed that as a part of the consideration of the order it would and thereby did release the buyer from all liability incurred by buyer for goods delivered and work done prior to such assignment, as well as subsequent thereto. It was further stated that the seller's sole right to payment in accordance with the order after date of any such assignment, would be against the United States Government.

Whether plaintiff can recover in this action is dependent upon the interpretation that is to be given to the word "purchaser" as used in the provisions regarding the purchase of the property.

When the invitation to bid, the orders themselves, and the various documents set out in findings 13, 14 and 15 are construed as a whole, we have no doubt that the Government is entitled to the land-grant rates. The purpose of Major Hofto in issuing the written memorandum set out in finding 15 was to effect the saving which would result to the Government by the transportation of the materials at land-grant rates.

When it appeared that a saving could be achieved by ordering the materials f. o. b. shipping point and having them shipped by rail at land-grant rates the lowest bidder was ascertained by adding the purchase price at vendor's plant to the transportation charges at land-grant rates. The contractor in purchasing the materials acted largely for the Government. It was a cost-plus-fixed-fee contract and the materials were purchased on behalf of the Government. The contracting officer ascertained both the land-grant and commercial rates, and also looked up the routing to find the lines of shipment which would be subject to land-grant rates. He did this for the purpose of effecting the savings which would result to the Government by the transportation of the materials at land-grant rates. When all the circumstances and the steps that were taken are considered together, it is manifest that for the purposes of the rates it was intended that the shipments should be made as Government property. Atlantic Coast

Line Ry. Co. v. United States, 127 Ct.Cl. 724, 119 F.Supp. 171. To implement this intention the contracting officer had first to make sure that title would pass from the sellers. Thereupon he could exercise his right to assert title in the Government. The purchase orders were directed to the sellers and, by inserting the language quoted, the contracting officer sought primarily to achieve a legal effect upon the sellers, that is, to divest them of their titles. The use of the word "purchaser" was perfectly adequate for this purpose.

In these circumstances we think the land-grant rates were properly applied.

What we have said applies to shipments to the Sangamon Ordnance Plant which was subject to substantially the same requirements and conditions.

There is more difficulty in reference to the shipments of machinery. Fifteen carloads of rented machinery and equipment were transported from the subcontractor's place at Chillicothe, Missouri, to White Horse, Yukon Territory, Canada, and upon completion of the project back to Chillicothe by way of Seattle, Washington. The War Department paid the subcontractor the rental rate prescribed. for the period during which the rental equipment was transported over the lines of the railway and its connecting carriers from Seattle, Washington, to Chillicothe, Missouri. Thus rent was paid on the equipment during the period of transportation. The question is whether for the purposes of section 321 (a) of the Transportation Act of 1940 this material was the property of the United States and therefore entitled to land-grant rates. There is no doubt that the title to the property did not pass to the United States. It remained at all times in the C. H. Atkinson Company but during the entire period covered by both the transportation and use it was under lease to the United States Government and the Government had complete control of it.

■ We believe that the term "property of the United States" is broad and comprehensive enough to include any and all types of property rights. The machinery was to be used exclusively for the United States and was under the complete control of the United States Government during the entire period of transportation and use. The Government was responsible for any damage that might have occurred during the entire period. Fidelity and Deposit Co. of Maryland v. Arenz, 290 U.S. 66, 68, 54 S.Ct. 16, 78 L.Ed. 176; Northern Pacific Ry. Co. v. United States, 330 U.S. 248, 257, 67 S.Ct. 747, 752, 91 L.Ed. 876. From the opinion in the latter case we quote the following:

"* * * But it is a familiar rule that where there is any doubt as to the meaning of a statute which 'operates as a grant of public property to an individual, or the relinquishment of a public interest,' the doubt should be resolved in favor of the Government and against the private claimant. Slidell v. Grandjean, 111 U.S. 412, 437, 4 S.Ct. 475, 487, 28 L.Ed. 321. See Southern Ry. Co. v. United States, 322 U.S. 72, 76, 64 S.Ct. 869, 872, 88 L.Ed. 1144. That rule has been applied in construing the reduced rate conditions of the land-grant legislation. Southern Pacific Co. v. United States, 307 U.S. 393, 401, 59 S.Ct. 923, 928, 83 L.Ed. 1363; Southern Ry. Co. v. United States, supra. That principle is applicable here where the Congress, by writing into § 321(a) an exception, retained for the United States an economic privilege of great value."

■ We hold that the United States Government had a property right in the machinery and equipment within the meaning of section 321(a) of the Transportation Act of 1940.

We conclude, therefore, that in each case here in question the property shipped was military or naval property of the United States moving for military or naval use within the meaning of section 321(a) of the Transportation

Act of 1940. Hence the carrier was entitled to be paid only the land-grant rate on these shipments.

The petition is dismissed.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.

Russell H. WILLIAMS, d/b/a Williams Equipment Co., and Reed & Martin, Inc., A Corporation

v.

The UNITED STATES.

No. 50403.

United States Court of Claims.

Jan. 11, 1955.

William H. Ferguson, Seattle, Wash., Donald McL. Davidson, Washington, D. C., on the briefs, for plaintiffs.

Kendall M. Barnes, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This case involves a contract between the plaintiffs and the defendant for the construction of a paved road at Fairbanks, Alaska. The facts have been set out in detail in our findings and will be referred to only to the extent necessary for an understanding of the issues which gave rise to the suit.

The principal issue has to do with the amount of borrow material which was excavated by the plaintiffs and put in place on the road. The contract provided for payment for the borrow material at $1.29 per cubic yard and the payment for hauling the material beyond a certain distance at a unit price of 32 cents per cubic-yard mile. The borrow material yardage to be paid for was to be measured in its original position in the borrow pit, which yardage was to be